IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

| | |
|---|---|
| RYAN MACEY <br> NICOLE MACEY <br><br> PLAINTIFFS <br><br> v. <br><br> FINANCIAL CREDIT SERVICE, INC. <br> d/b/a ASSET RECOVERY <br> ASSOCIATES a/k/a ARA, INC. <br><br> DEFENDANT | CIVIL ACTION FILE NO: <br> 4:15-cv-202 (CDL) <br><br> Jury Trial Demanded |

## COMPLAINT FOR DAMAGES

COME now Ryan Macey and Nicole Macey and brings this their action for violation of the Fair Debt Collection Practices Act ("FDCPA") *15 U.S.C.A. § 1692, et seq.*, violation of the Georgia Fair Business Practices Act ("GFBPA") *O.C.G.A. § 10-1-391, et seq.*, and declaratory relief as against Financial Credit Services, Inc. dba Asset Recovery Associates aka ARA, Inc., hereinafter designated and referred to as Defendant, and for cause respectfully shows as follows:

## PARTIES

1.

Plaintiffs are natural persons and citizens of Chattahoochee County in the Middle District of Georgia, and are "consumers" as defined by *15 U.S.C. §*

*1692a(3)* and Plaintiff Ryan Macey allegedly owes a "debt" as defined by *15 U.S.C. § 1692a(5)*.

2.

Defendant is, upon knowledge and belief, a foreign corporation functioning as a proprietorship deceptively veiled as a foreign corporation, whose principal business is the collection of debts, operating as a debt collector from its principal place of business or whose corporate citizenship is in the State of Illinois and regularly collects or attempts to collect debts owed or due or asserted to be owed or due another in Georgia, Middle District and is a "debt collector" as defined by *15 U.S.C. § 1692a(6)*.

## JURISDICTION AND VENUE

3.

Jurisdiction of this Court arises under *15 U.S.C. §§ 1692k(d), 28 U.S.C. § 1331* and *O.C.G.A. § 9-10-91(1)*.  Declaratory relief is available pursuant to *28 U.S.C. § 2201*.  The United States District Court also has supplemental jurisdiction with regard to Plaintiffs' state law claims and under the doctrine of supplemental jurisdiction as set forth in *28 U.S.C. § 1367*.

4.

Defendant may be served with process at its registered office: FINANCIAL CREDIT SERVICE, INC, c/o Mario Bianchi, 1919 South Highland Ave., Suite 225A, Lombard, IL  60148.

5.

Venue is proper, pursuant to *28 U.S.C. § 1391(b)* because many of the relevant events and/or activities damaged a consumer living in the Middle District of Georgia, through the acts and omissions of a corporate citizen with a professional plant facility in the Northern District of Illinois and pursuant to *O.C.G.A. § 9-10-93*.

6.

This is an action brought by a consumer for violations of the FDCPA, *15 U.S.C. §§ 1692 - 1692o* and *O.C.G.A. §§ 10-1-393, et seq.*, in connection with an alleged defaulted debt.  Plaintiffs seek actual damages, treble damages, statutory and punitive damages, and to the extent possible, injunctive and declaratory relief.

## REQUEST FOR TRIAL BY JURY

7.

Plaintiffs request a trial by jury.

## REQUEST FOR COSTS OF LITIGATION AND ATTORNEY'S FEES

8.

Plaintiffs respectfully request that this Honorable Court award Plaintiffs their litigation expenses and other costs of litigation and reasonable attorney's fees incurred in this litigation in accordance with the provisions of *15 U.S.C.S. § 1692k(a)(3), O.C.G.A. 10-1-399 (c) & (d)*, the Georgia Fair Business Practices Act and/or other laws.

9.

Plaintiff Ryan Macy is a natural person obligated, or allegedly obligated, to pay a debt owed to, or asserted to be owed to, a creditor other than Defendant.

10.

Plaintiff Nicole Macey is the spouse of Ryan Macey and is not obligated to pay a debt.

11.

Plaintiff Ryan Macey's obligation, or alleged obligation, owed to, asserted to be owed to the creditor other than Defendant from the transaction in which Plaintiff Ryan Macey maintained an account with Bank One, and those are the services of the subject of this transaction and were incurred primarily for personal, family or household purposes.

12.

Defendant uses instrumentalities of interstate commerce as the means in business with the principal purpose of which is the collection of debts, and/or regularly collects or attempts to collect, directly or indirectly, debts owed to, or asserted to be owed to another.

**GENERAL FACTUAL BASIS OF CLAIM**

13.

In connection with the collection of the Debt, Defendant sent Plaintiff Ryan Macey a written communication dated July 20, 2015.

14.

A true and correct copy of Defendant's July 20, 2015 letter is attached as Exhibit "A".

15.

Defendant's July 20, 2015 letter to Plaintiff was its initial communication with Plaintiff with respect to the Debt.

16.

The letter stated, in part: "If you notify this office in writing within 30 days of receiving this notice, that you dispute the validity of the debt or any portions thereof, *this office will obtain a copy of a judgement [sic] and mail you a copy* of such verification."

17.

Section 1692g(a)(4) of the FDCPA requires a statement, in the initial written communication or within five days thereof, "that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, *the debt collector will obtain verification of the debt* or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector." 15 U.S.C. § 1692g(a)(4).

18.

Defendant's statement would lead the least sophisticated consumer to believe that a judgment had been entered against them, or that if they disputed the debt or any part of it, that Defendant would obtain a judgment against them.

19.

There is no judgment against Plaintiff for the Debt.

20.

Defendant's July 20, 2015 letter also stated, in part:

If you request in writing, within 30 days after receiving this notice, this office will provide you the name and address of the original ORIGINAL CREDITOR, if different that the current ORIGINAL CREDITOR.  Exhibit "A".

21.

Defendant's July 20, 2015 initial communication failed to meaningfully convey to Plaintiff the statement that upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the *current creditor* as required pursuant to 15 U.S.C. § 1692g(a)(5).

22.

Defendant's July 20, 2015 initial communication would confuse the least sophisticated consumer, because it obtusely suggests that the current creditor is the original creditor and does not meaningfully provide the Plaintiff with a means to determine the nature of the purported obligation.

23.

Defendant, therefore, failed to properly provide Plaintiff the disclosures required pursuant to 15 U.S.C. § 1692g (a)(5) either in its July 20, 2015 initial communication or within five days thereafter.

24.

On Friday, July 24, 2015, Plaintiff Nicole Macey received the initial letter from ARA, Inc. in household mail stating that Ryan Macey owed Defendant in excess of $20,000.

25.

Plaintiffs Nicole and Ryan Macey were married in 2004 and Ms. Macey had never seen evidence of any purported debt that size in their 11 years of marriage. She called the phone number provided to dispute the debt and asked to speak with Mark Farmer as he is listed at the bottom of the letter.

26.

Nicole Macey was told that Mr. Farmer was on a phone conference and was unavailable and was then connected to a female debt collector.

27.

Nicole Macey told the debt collector that she and her husband wanted to dispute the matter and asked her to send Plaintiffs any information ARA, Inc. possessed concerning the debt, thereby requesting verification.

28.

The debt collector began asking personal questions, for instance, she asked Nicole Macey if Ryan had been previously married and how much she knew about his previous dealings.

29.

Plaintiff Nicole Macey refused to engage and explained to the debt collector that she only wanted verification to determine the validity of ARA's claim on the debt.

30.

The debt collector, without response, then transferred Ms. Macey to a woman named Tammy Bloomberg.

31.

As soon as Ms. Bloomberg was asked to send verification, she stated there was only one way to get out from under the debt and that was to settle.

32.

Ms. Bloomberg stated that the bulk of the $20,319.60 debt was interest and that Defendant would be willing to completely cut off the interest and settle for around $8,000.00, the amount of the original debt.

33.

Ms. Macey stated that she had no idea what the debt was for or when it was incurred.

34.

Ms. Bloomberg stated that the debt was owed to Bank One and was from 1997/98.  When Ms. Macey inquired as to what the alleged debt was for, Ms. Bloomberg could not provide an answer.

35.

A credit card debt from 1998 is time barred.

36.

Ms. Bloomberg stated that the Maceys' only two options were to settle or file bankruptcy, and that bankruptcy was a hassle.

37.

Ms. Macey told Ms. Bloomberg there was no way they could settle the debt for the amount she was asking for and that she wanted to speak with Mr. Macey about it.

38.

Ms. Bloomberg said she would reduce the settlement amount to $4,398.00, but that it must be paid right away.

39.

Ms. Bloomberg stated that if the Maceys didn't settle for the reduced amount, that on Monday her company would move to have the full $20,319.60 put onto Mr. Macey's credit report and they would move to garnish his wages for up to 40%. This put Ms. Macey into a state of complete panic.

40.

Ms. Macey tried to explain to Ms. Bloomberg that they could not afford even the reduced settlement and that she needed to get off the phone so that she could call her husband and her family to look at options on how to proceed.

41.

Ms. Bloomberg quickly told Ms. Macey that the deal was only valid on the "initial contact" and would not be valid if she got off the phone. If she got off the phone, the debt would remain at the full amount of $20,319.60.

42.

Ms. Bloomberg said she could help only if Ms. Macey put a payment on the settlement and agreed to call back on Tuesday to pay the remainder. Nearly in tears, Ms. Macey told her she could not even afford to pay $100.00 towards the debt. She then asked how much Ms. Macey could pay down. She asked if Ms. Macey could pay $50.00 and Ms. Macey said no. Ms. Bloomberg then asked if Ms. Macey could pay $25.00. Ms. Macey didn't know what to do and was incredibly scared that if she did not agree to something, their entire financial future would be in complete ruins.

43.

Ms. Macey agreed to pay the $25.00. She was then transferred to a man. The man made various threats and representations, but Ms. Macey has no real memory of what was said. She was in too much of a panic state to think clearly.

44.

Immediately after that phone call, Ms. Macey broke down and started weeping. She called her husband, Ryan, and explained what just happened.

45.

Ryan Macey immediately got agitated and stated that he needed to call the Office of the Judge Advocate General (JAG) since the story sounded incredibly fishy to him.

46.

Ryan Macey called Ms. Macey back and asked for the name of company, their phone number, and the name of the person Ms. Macey had spoken to. He also asked Ms. Macey to call the bank and attempt to stop payment on the $25.00 payment.

47.

Ms. Macey called the bank, but since the payment was pending there was nothing that could be done to reverse it.

48.

Ryan Macey called ARA, Inc. and spoke with Ms. Bloomberg. He explained to her that he never agreed to the terms of the settlement and didn't think they had a valid claim.

49.

The conversation got incredibly heated between the two of them over how Ms. Macey was treated and the unscrupulous nature of their business practices.

50.

Ryan Macey also demanded that they send him proof of the debt because he intended to fight ARA, Inc.

51.

In response, ARA, Inc. sent the Affidavit of Eric Kussman, which stated that the account had been purchased from Pro Recovery Systems, along with the settlement letter from Ms. Bloomberg.

52.

The following week, the Maceys met with JAG and were encouraged to seek legal help in resolving this matter, as ARA, Inc. acted well outside the law.

53.

Ms. Bloomberg told Nicole Macey, a least sophisticated consumer, that her only options were to settle with Defendant or file bankruptcy, telling her that she didn't want to go through the hassle of bankruptcy.

54.

Ms. Bloomberg told Ms. Macey that if she didn't settle for the settlement amount offered, that on Monday ARA would move to have the full $20,319.60 put onto Ryan Macey's credit report.  Because this alleged debt is time barred and beyond the seven year reporting period, Defendant was threatening to take an

action that it could not take or did not intend to take in violation of 15 U. S. C. § 1692e (5). This threat is also a violation of 15 U. S. C. § 1692e (8).

55.

Ms. Bloomberg stated the Defendant would, at that time, garnish the wages of Ryan Macey for up to 40% of his pay. Because Defendant had no judgment upon which to base a garnishment and because no judgment lay upon the time barred debt, Defendant was knowingly threatening to take an action that it could not take or did not intend to take in violation of 15 U. S. C. § 1692e (5). Because the representation falsely described the character and legal status of the purported debt it violates 15 U. S. C. § 1692e (2). Because it threatens garnishment, it violates 15 U. S. C. § 1692e (4).

56.

This misrepresentation had the intended effect of imposing severe emotional duress on Ms. Macey as she went into a complete panic mode as she knew that there could possibly be serious implications to Mr. Macey's military career affecting the level of security clearance available, hence promotional opportunity. It violates 15 U. S. C. § 1692d.

57.

Ms. Macey is a homemaker managing her family on an enlisted soldier's pay and was frightened at the prospect of losing 40% of it. Further, the couple had

been diligently seeking to improve their credit rating so they could buy a house in the future and the imminent actions threatened by Ms. Bloomberg posed a real and present danger to the family enterprise.

58.

Ms. Bloomberg then told Ms. Macey that a $25 payment would suffice to hold the deal.

59.

The sole purpose of a transaction of that nature would be to trigger a renewed statute of limitations predicated upon a fresh written indicia of intent to pay the time barred debt of Ms. Macey's husband, Ryan Macey.

60.

The extorted payment made by Ms. Macey would have no such legal effect, though in an environment in which Nicole Macey envisioned the entire financial future of her family collapsing into complete ruin, Ms. Macey did pay the $25.

61.

After unsuccessfully attempting to get his bank to reverse the payment debit transaction, Ryan Macey phoned ARA, Inc. and spoke with Ms. Bloomberg. Macey explained that he never agreed to the terms of the settlement and didn't think the claim as valid.

62.

In response, Defendant sent the Affidavit of Eric Kussman that stated it purchased the account from Pro Recovery Systems (not descriptive of a legal entity) and that it was "assignor". Defendant has not identified Pro Recovery Systems nor produced an assignment from him/her/it evidencing conveyance of any right to collect from Plaintiff.

63.

Defendant has not shown standing, even, to collect upon a valid obligation, let alone a time barred one.

64.

The activities of Defendant, without standing, are a violation of 15 U. S. C. § 1692e (5).

65.

Plaintiffs in this case are "persons" and "consumers" within the ambit of O.C.G.A. § 10-1-392(a)(6), as defined by the Georgia Fair Business Practices Act.

66.

"The purpose of this part shall be to protect consumers and legitimate business enterprises from unfair or deceptive practices in the conduct of any trade or commerce in part or wholly in the state. It is the intent of the General Assembly that such practices be swiftly stopped, and this part shall be liberally construed and

applied to promote its underlying purposes and policies." O.C.G.A. § 10-1-391(a)."

67.

Unfair collection practices, practices that violate 15 U. S. C. § 1692, et seq., violate O.C.G.A. § 10-1-391, et seq., *1st Nationwide Collection Agency, Inc. v. Werner*, 288 Ga. App. 457, 458-59, 654 S.E. 2d 428, 431 (2007), *Gilmore v. Account Management, Inc.*, 357 Fed. App'x 218, 220-21 (11th Cir. 2009), *Nickens v. Equifax Info. Servs., LLC*, 2013 U.S. Dist. LEXIS 127441(Northern District of Georgia 2013).

68.

Therefore this Defendant is liable over to the Plaintiffs, and each of them, for any actual damages in accordance with 15 U. S. C. § 1692k(1) plus $1,000 statutory damages for violations of the federal Fair Debt Collection Practices Act pursuant to 15 U.S.C. § 1692k(a)(2)(A), and for attorney's fees and expenses of litigation as provided by 15 U. S. C. § 1692k (3).

69.

Moreover, and pursuant to the Georgia Fair Business Practices Act, O.C.G.A. § 10-1-399(a), Defendant is liable over to Plaintiffs, and each of them, for their general damages such as fright, horror, grief, shame, humiliation, embarrassment, anger, frustration, chagrin, disappointment, worry, nausea and

mental anguish in an amount be determined by presentation to an impartial judge or jury, together with punitive damages to punish Defendant for its egregious, vexatious and burdensome misconduct and discourage its repetition.

70.

Additionally, because the actions of Defendant were deliberate and calculated to cause the very harm that obtained, Defendant is liable to Plaintiffs for treble (triple) damages pursuant to O.C.G.A. § 10-1-399(c) and attorney's fees and expenses of litigation as mandated by O.C.G.A. § 10-1-399(d).

**WHEREFORE,** Plaintiffs pray for relief and judgment, as follows:

a) Adjudging that Defendant violated 15 U. S. C. § 1692d;

b) Adjudging that Defendant violated 15 U. S. C. § 1692e (4);

c) Adjudging that Defendant violated 15 U. S.C. § 1692e (5);

d) Adjudging that Defendant violated 15 U. S. C. § 1692e (8);

e) Adjudging that Defendant violated 15 U.S.C. § 1692g(a)(5);

f) Adjudging that Defendant violated O.C.G.A. § 10-1-391, et seq.;

g) Awarding Plaintiffs, and each of them, statutory damages, pursuant to 15 U.S.C. § 1692k(a)(2)(A), in the amount of $1,000.00;

h) Awarding Plaintiffs, and each of them, actual damages, pursuant to 15 U.S.C. § 1692k(a)(1) and O.C.G.A. § 10-1-399(a) for fright, horror, grief, shame, humiliation, embarrassment, anger, frustration, chagrin,

disappointment, worry, nausea and mental anguish in an amount be determined by presentation to an impartial judge or jury;

i) Awarding Plaintiffs, and each of them, treble (triple) damages pursuant to O.C.G.A. § 10-1-399(c);

j) Awarding Plaintiffs, and each of them, most especially, punitive damages pursuant to O.C.G.A. § 10-1-399(a) in an amount which, in the enlightened conscience of an impartial jury may be sufficient to punish Defendant for its egregious, vexatious and burdensome misconduct and discourage its repetition;

k) Awarding Plaintiffs reasonable attorneys' fees and costs incurred in this action pursuant to 15 U.S.C. § 1692k(a)(3) and O.C.G.A. § 10-1-399(d);

l) Awarding Plaintiffs pre-judgment and post-judgment interest as permissible by law; and

m) Awarding such other and further relief as the Court may deem just and proper.

## TRIAL BY JURY

Plaintiffs are entitled to and hereby demand a trial by jury.

This 9th day of December, 2015.

/s/ John W. Roper  
John W. Roper  
Georgia Bar No:  614159

The Roper Law Firm
5353 Veterans Parkway, Suite D
Columbus, Georgia 31904
(706) 596-5353
Fax: (706) 596-5383
johnroper@roperlaw.com